UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                          Case No. 3:24-cr-279

        Plaintiff,

v.                                          MEMORANDUM OPINION
                                                 AND ORDER

Bryonia Myers,

        Defendant.

## I.     INTRODUCTION

Defendant Bryonia Myers seeks to suppress evidence seized during a search of her residence. (Doc. No. 22). The government filed a brief in opposition to the motion. (Doc. No. 244). Myers did not file a brief in reply. For the reasons stated below, I deny her motion.

## II.     BACKGROUND

In June 2024, agents with the Drug Enforcement Administration and detectives with the Sandusky, Ohio Police Department made contact with an individual who could purchase illegal narcotics from a man named Jarvis Pool. (Doc. No. 244-1 at 6). Pool had garnered law enforcement attention because he was suspected of being part of a drug trafficking organization operating in the Sandusky area. Over the next two months, this confidential source ("CS#1") contacted Pool through telephone calls and text messages to arrange at least three controlled purchases of crack cocaine. (*Id.* at 7-11, 12-13).

As part of the investigation, agents obtained Title III wireless surveillance warrants for several suspected members of the drug trafficking organization, including Pool and Danny Johnson. (*See* Doc. No. 244 at 6 n.4-5; Doc. No. 244-2). On July 15, 2024, investigators intercepted a phone call in which Pool stated he intended to sell 15 grams of cocaine to another individual for $2,000, before then delivering the money to Johnson. (Doc. No. 244-1 at 11). Then, on a call occurring on July 23, 2024, Pool stated he moved some "merch" from a car parked on Filmore Street in Sandusky to a residence. (*Id.*).

On the same date, investigators learned from another confidential source ("CS#2") that Pool bought 2 kilograms of cocaine the previous day and moved them from a vehicle belonging to Rodney Hicks, parked near Hicks' residence on Filmore Street, to Myers' residence on Carr Street in Sandusky.[1] (*Id.* at 11-12). CS#2 also told investigators that Myers was transporting narcotics for Pool. (*Id.* at 12). Ronald Brotherton, a Sandusky Police Detective and a task force officer with the Toledo Resident Office of the DEA who was assisting with the investigation, believed Pool was referring to the cocaine when Pool stated he moved "merch." (*Id.*).

Brotherton obtained a search warrant for Myers' Carr Street residence from Sandusky Municipal Court Judge Erich O'Brien on July 29, 2024. Investigators executed the search warrant the same day and seized illegal narcotics including cocaine, fentanyl, marijuana, and crystal methamphetamine. (*Id.* at 17). Myers was subsequently charged with conspiracy to distribute controlled substances and possession of methamphetamine, fentanyl, and cocaine with intent to distribute. (Doc. No. 18).

### III. ANALYSIS

The Fourth Amendment generally requires law enforcement officers to obtain a warrant, based upon probable cause, before searching a location in which an individual has a reasonable

---

[1] Myers and Pool previously dated. (*See* Doc. No. 244-1 at 11).

expectation of privacy. *See, e.g., Carpenter v. United States*, 585 U.S. 296, 304 (2018) ("When an individual 'seeks to preserve something as private,' and his expectation of privacy is 'one that society is prepared to recognize as reasonable,' we have held that official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause.") (further citation omitted).

Probable cause is the "'reasonable grounds for belief'" that evidence of a crime will be found in a certain place or location. *United Stated v. Lattner*, 385 F.3d 947, 951 (6th Cir. 2004) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). "Probable cause exists when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir. 1985) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

The probable cause inquiry does not require "an 'actual showing' of criminal activity at the targeted location, . . . instead ask[ing] whether officers provided direct or circumstantial support to create 'more than mere suspicion' that contraband will be found at the location in question." *United States v. Sanders*, 106 F.4th 455, 462 (6th Cir. 2024) (en banc) (quoting *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019) (further citation omitted), and *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000) (further citation omitted)).

The principles underlying a court's probable cause review are familiar. The Fourth Amendment requires only that "the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236 (citation omitted) (alteration in original). An affidavit "should be reviewed in a commonsense – rather than a hypertechnical – manner, and the court should consider whether the totality of the circumstances supports a finding of probable cause, rather than engaging in line-by-line scrutiny." *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004). A magistrate judge's probable-cause determination is entitled to "great

deference." *Sanders*, 106 F.4th at 461 (quoting *Christian*, 925 F.3d at 311-12 (further citation and quotation marks omitted)).

Myers argues the warrant affidavit failed to establish probable cause to search her residence because: (1) CS#2's assertion that Myers transported drugs for Pool was too vague and did not offer a time frame for Myers' alleged activity; (2) Brotherton did not provide any information to establish that CS#2 was reliable; and (3) the warrant affidavit did not adequately implicate Myers in illegal activities. (Doc. No. 222). Myers also contends officers could not have relied on the search warrant in good faith. These arguments are not persuasive.

I consider Myers' second argument first. She contends "Brotherton provides absolutely no information relating to CS#2's basis for knowledge, veracity, or reliability." (*Id.* at 9). But this is not true. Brotherton averred CS#2 "contacted" investigators to provide detailed information and that "CS#2 has provided Law Enforcement with information pertaining to this investigation and other narcotics investigations that has been proven to be reliable." (Doc. No. 244-1 at 11). "'The statements of an informant . . ., whose identity was known to the police and who would be subject to prosecution for making a false report, are . . . entitled to far greater weight than those of an anonymous source.'" *United States v. Dyer*, 580 F.3d 386, 391 (6th Cir. 2009) (quoting *United States v. May*, 399 F.3d 817, 824-25 (6th Cir. 2005)) (first ellipsis in *Dyer*).

Moreover, investigators easily confirmed the information CS#2 provided based upon an intercepted phone call between Pool and Johnson, in which Pool stated he had to move "some merch" from Hicks' car to Myers' house. (Doc. No. 244 at 8-11). (*See also* Doc. No. 244-1 at 11). While not required in light of the averments of reliability in the warrant affidavit, this "substantial independent police corroboration" was sufficient to establish that CS#2's statements supported a finding of probable cause to search Myers' residence. *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005) (citations omitted).

4

I consider (and reject) Myers' first and third arguments together. The main thrust of these sections of her motion is that the warrant affidavit does not establish probable cause to "implicate[] Ms. Myers in any criminal activity whatsoever." (Doc. No. 222 at 8). Even at first glance, this assertion does not accurately reflect the contents of the affidavit, in which Brotherton stated that Pool stored two kilograms of cocaine at Myers' house and also directed Hicks to "drive MYERS around to sell narcotics and to pick up narcotics from MYERS['] residence" on Carr Street. (Doc. No. 244-1 at 12).

But, more to the point, these arguments are immaterial. Probable cause "is said to exist 'when there is a "fair probability," given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place.'" *Lattner*, 385 F.3d at 951 (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)) (emphasis added). Brotherton cited information establishing that Pool routinely sold illegal narcotics in the Sandusky area and was storing at least two kilograms of cocaine inside Myers' house. That information was more than adequate to establish probable cause to search Myers' Carr Street residence.

Finally, even if the warrant affidavit did not support a probable cause finding, officers reasonably relied on it in good faith consistent with the Supreme Court's decision in *United States v. Leon*, 468 U.S. 897 (1985). "[A] court reviewing an officer's good faith under *Leon* may look beyond the four corners of the warrant affidavit to information that was known to the officer and revealed to the issuing [judge]." *Frazier*, 423 F.3d at 535-36 (citing cases). Investigators orally informed Judge O'Brien about the authorized wiretap on Pool's cell phone and that some of the details in the warrant affidavit in fact were taken from Pool's intercepted communications. (*See* Doc. Nos. 244-2 and 244-3). These recorded communications, along with the affidavit itself, confirm it was reasonable for officers to rely on the search warrant Judge O'Brien approved. *See Frazier*, 423 F.3d at 536.

5

## IV. CONCLUSION

For the reasons set forth above, I deny Defendant Bryonia Myers' motion to suppress. (Doc. No. 222).

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge